UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FRANK MOTA, | ) ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) ) Civil Action No. 16-10615 |
| SEAN MEDEIROS, THOMAS TURCO III, | ) ) ) |
| Defendants. | ) ) ) ) |

## MEMORANDUM AND ORDER

CASPER, J.                                                                                                                          March 28, 2018

### I. Introduction

Plaintiff Frank Mota ("Mota") brings claims against Defendants Sean Medeiros, the Superintendent of Massachusetts Correctional Institution – Norfolk ("MCI-Norfolk"), a medium security prison in Norfolk, Massachusetts, and Thomas Turco III, the Commissioner for the Department of Corrections, related to his request for a special religious diet. The Defendants moved for summary judgment and Mota filed a cross-motion for partial summary judgment with respect to his claims under the First Amendment and Section 1983. D. 29, D. 33. For the foregoing reasons, Mota's motion for partial summary judgment, D. 33, is DENIED and the Defendants' motion for summary judgment, D. 29, is ALLOWED.

## II. Factual Summary

The following facts are undisputed.[1] The Massachusetts Department of Corrections ("DOC") maintains a standard operating procedure ("SOP") pertaining to special dietary requests by inmates. D. 31 ¶ 6; D. 34 at 2. From 2003 until January 19, 2016, the SOP in place provided as follows. D. 31 ¶ 4. Inmates requesting a special diet were to submit a request form and the superintendent of the facility, or the designee of the superintendent, would review the request and forward the request to the Religious Service Review Committee ("RSRC") for a formal decision. D. 30-5 at 15. Once a request for a special diet was approved by the RSRC, the superintendent, or the designee of the superintendent, would notify the food services director, who would place the inmate on the list of inmates to receive that particular special diet. Id. Inmates who received approval for their special diet were to show their identification and sign for their special diet at each meal. Id. If a staff member witnessed an inmate on the special diet list accessing a meal from the "mainline" menu (the menu for inmates not on any special diet), the staff member was to write an Incident Report and forward it to the superintendent or the designee of the superintendent. Id. If a particular inmate received three Incident Reports within a thirty-day period reflecting that the inmate had accessed meals from the mainline menu, the inmate would be removed from the special diet list for a minimum of sixty days, after which the inmate could re-apply for a special diet. D. 30-5 at 16. If an inmate was removed from the special diet list for this reason twice within a twelve-month period, the DOC would remove the inmate from the special diet list indefinitely. Id. The special diet policy was to "continue without break upon transfer to another facility." Id.

Effective January 19, 2016, the DOC revised the SOP. D. 31 ¶ 18. The revised SOP

---

[1] Mota, who appears *pro se*, did not file an opposition to the Defendants' motion for summary judgment. He did not dispute these facts in the cross-motion for summary judgment, D. 34, or at the hearing, D. 40.

matched the prior SOP, except that an inmate removed twice from the special diet list for accessing meals from the mainline menu – in any span of time, not just within a twelve-month window – would be removed from the special diet list for six months, after which the inmate could re-apply for a special diet. D. 30-7 at 3. If an inmate did re-apply for a special diet, receive access, and subsequently get removed from the special diet list for accessing meals from the mainline menu, the inmate would have to wait six months before being eligible to re-apply for the special diet. D. 30-7 at 3-4.

Mota is currently incarcerated at MCI-Norfolk, D. 31 ¶ 1, D. 34 at 2, and was previously incarcerated at the Souza-Baranowski Correctional Center in Shirley, Massachusetts ("SBCC"). D. 31 ¶ 19-21. While at SBCC, Mota requested the "halal" diet, a special diet reflecting Mota's religious requirements, and was approved for such diet on May 13, 2010. D. 31 ¶ 19. Mota was removed from the special diet list on June 14, 2011, due to his getting three meals from the mainline menu within a thirty-day period. D. 31 ¶ 20, D. 34 at 3. On June 16, 2011, Mota was transferred from SBCC to MCI-Norfolk. D. 31 ¶ 21. In August 2011, Mota requested that he receive access again to the special diet and was placed on the special diet list on August 31, 2011. D. 31 ¶ 23, D. 34 at 3. On November 23, 2011, Mota was removed again from the special diet list because of getting meals from the mainline menu. D. 31 ¶ 24, D. 34 at 3. On February 19, 2012, Mota submitted a grievance requesting that he be reinstated to the special diet list. D. 30-2 at 5. On March 2, 2012, the DOC denied that grievance because Mota's termination from the special diet list complied with the terms of the then-operative SOP. Id. On March 12, 2012, Mota appealed the denial of his grievance and his appeal was denied because Mota was now "ineligible for a special diet meal due to the fact that [Mota was] terminated twice within one year." D. 30-2 at 7. On July 14, 2015, Mota filed a new grievance requesting that he be reinstated on the special

diet list. D. 30-2 at 8. On August 6, 2015, the new grievance was denied on the ground that it was duplicative of the prior grievance. D. 30-2 at 8. On August 11, 2015, Mota appealed and his appeal was denied on September 8, 2015. D. 30-2 at 10. On September 12, 2016, Mota was advised by the Director of Treatment at MCI-Norfolk, Bruce Pires, that, based on the change in the SOP, Mota was eligible to reapply for reinstatement on the special diet list. D. 31 ¶ 32. Mota has not submitted such a request yet. D. 31 ¶ 34.

## III. Procedural History

On March 28, 2016, Mota filed his complaint. D. 1. On April 28, 2017, Mota filed the amended complaint. D. 28. In the now-operative amended complaint, Mota requested relief under the First Amendment of the Constitution, the Fourteenth Amendment, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and 42 U.S.C. § 1983. D. 28 at 1. He requested injunctive relief; a declaratory judgment that the Defendants' actions violated his constitutional rights; and damages against each defendant in their personal and official capacities. D. 28 at 7.

The Defendants have now moved for summary judgment, D. 29, and Mota has filed a cross-motion for partial summary judgment with respect to his claims under the First Amendment and Section 1983, D. 33. The Court has heard argument on the motions and took the matter under advisement. D. 40.

## IV. Discussion

### A. <u>Standard of Review</u>

A movant is entitled to summary judgment where there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). Material facts are those that carry the potential "to affect the outcome of the suit under the applicable law." <u>Santiago–Ramos v. Centennial P.R. Wireless Corp.</u>, 217 F.3d 46, 52 (1st Cir. 2000) (quoting <u>Sánchez v. Alvarado</u>, 101 F.3d 223, 227 (1st Cir. 1996)). The movant bears the burden of demonstrating that there exists no genuine issue of material fact.

Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rely exclusively upon the allegations or denials in her pleadings. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Instead, the nonmoving party "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" Id. (alteration in original) (quoting Anderson, 477 U.S. at 249). In conducting this inquiry, the Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009).

To prevail on a claim under RLUIPA, a plaintiff must show "(1) that an institutionalized person's religious exercise has been burdened and (2) that the burden is substantial," and if the plaintiff does so, the burden then shifts to the defendant(s) to show "(3) that the burden furthers a compelling governmental interest and (4) that the burden is the least restrictive means of achieving that compelling interest." Spratt v. R.I. Dept. of Corrections, 482 F.3d 33, 38 (1st Cir. 2007). To prevail on a Section 1983 action asserting a First Amendment violation, "a prison regulation which restricts an inmate's First Amendment rights is permissible if it is 'reasonably related to legitimate penological interests.'" Kuperman v. Wrenn, 645 F.3d 69, 74 (1st Cir. 2011) (quoting Turner v. Safley, 482 U.S. 78, 89 (1987)). The factors to consider in determining whether a regulation meets that standard include "(1) whether there is a valid, rational connection between the regulation and the legitimate government interest put forward to justify it; (2) whether alternative means to exercise the right exist; (3) the impact that accommodating the right will have on prison resources; and (4) the absence of alternatives to the prison regulation." Id.

The Court need not reach the substantive merits of Mota's claims under Section 1983 and RLUIPA, however, since, as discussed below, the Court concludes that all of the claims for equitable relief and damages that he seeks all fail.

### B. Injunctive Relief

In the amended complaint, Mota sought "a preliminary and permanent injunction precluding the defendants from removing individuals from the religious diet program," "an [o]rder that the defendants institute the least restrictive means that does not interfere with [an individual's] religious freedom," and "an [o]rder that the defendants reinstate Plaintiff Frank Mota back onto his religious diet meals." D. 28 at 7. "A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court can grant such relief. A plaintiff must demonstrate: 1) that it has suffered an irreparable injury; 2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; 3) that, considering the balance of hardships between the plaintiff and the defendant, a remedy in equity is warranted; and 4) that the public interest would not be disserved by a permanent injunction." Monsanto Co. v. Geertson Seed Farms, 561 U.S. 139, 156-57 (2010) (citation omitted). Mota has failed to make the first showing of irreparable harm given MCI-Norfolk's notice to Mota that he is now eligible to re-enroll in the special diet list because of the new SOP. D. 30 at 8, 18. The only legally cognizable injury that Mota identified in the amended complaint that could be remedied by injunctive relief was Mota's inability to receive special diet meals, leaving no other injury which this Court could redress with injunctive relief. See Gulf of Maine Fisherman's Alliance v. Daley, 292 F.3d 84, 88 (1st Cir. 2002) (ruling request for injunctive relief moot in light of policy change that occurred while case was pending). At the hearing regarding this motion, D. 40, the parties agreed that there is currently no obstacle to Mota receiving special diet meals. Additionally, Mota appears to make no argument that the
6

current policy violates either RLUIPA or the First Amendment. Having failed to satisfy the first prong of the four-prong test for injunctive relief, the Court need not address the remaining prongs. For these reasons, the Defendants' motion for summary judgment with respect to injunctive relief is thus ALLOWED.

### C. <u>Declaratory Judgment</u>

In the amended complaint, Mota also sought a declaratory judgment that the acts and omissions described "violated [Mota's] rights under the Constitution and Laws of the United States." D. 28 ¶ 26. For a plaintiff to have standing to assert a claim for a declaratory judgment that a government policy is unconstitutional, the plaintiff must show "that he has suffered (or has been threatened with) an invasion of a legally protected interest which is . . . concrete and particularized . . . together with a sufficient likelihood that he will again be wronged in a similar way." <u>Berner v. Delahanty</u>, 129 F.3d 20, 24 (1st Cir. 1997) (citations omitted); <u>see</u> <u>McCracy v. Jones</u>, No. 13-cv-573, 2015 WL 873641 (W.D. Okla. Feb. 27, 2015) (dismissing claim for declaratory relief under RLUIPA and Constitution where claims for damages and injunctive relief failed). Because the policy that Mota challenges is no longer in effect, there is no sufficient likelihood that he will again be wronged in a similar way, and therefore, Mota does not have standing to pursue his claim for declaratory judgment. The Defendants' motion for summary judgment with respect to the declaratory judgment claim is thus ALLOWED.

### D. <u>Damages: Official Capacities</u>

In the amended complaint, Mota sought punitive damages against the Defendants, under the Section 1983 and RLUIPA, without specifying whether the punitive damages request was against the Defendants in their individual or official capacities. D. 28 ¶ 31. To the extent that Mota seeks damages under RLUIPA from the Defendants in their official capacity, such relief

7

would be barred by sovereign immunity. See Sossamon v. Texas, 563 U.S. 277, 285-86 (2011) (holding that suits against state officials in their official capacity under RLUIPA are barred by state sovereign immunity). Similarly, any claim for damages under Section 1983 against the Defendants in their official capacity is similarly barred by sovereign immunity. Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991).

### E. Damages: Individual Capacities

To the extent that Mota sought damages against the Defendants in their individual capacities based on his claims under Section 1983 and RLUIPA, D. 28 ¶ 30, the Court now turns to that relief. The Defendants, in their motion for summary judgment, contend that they cannot be held liable in their individual capacity because they cannot be held liable simply by virtue of their roles as supervisors. D. 30 at 14. In Sanchez v. Pereira-Castillo, 590 F.3d 31 (1st Cir. 2009), the First Circuit explained that, under Section 1983, a government official sued in his individual capacity cannot be held liable merely on the basis of "respondeat superior," or supervisor liability, but only based on his "own acts or omissions," including being a "direct participant in the rights-violating incident" or "supervis[ing], train[ing], or hir[ing] a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation." Id. at 49. In other words, there must be an "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization, between the actor and the underlying violation." Id. (citation omitted). A supervisor may also be liable under Section 1983 if he "formulates a policy or engages in a practice that leads to a civil rights violation committed by another." Camilo-Robles v. Hoyos, 151 F.3d 1, 7 (1st Cir. 1998). There is nothing in the record here, however, that points to any particular actions,

omissions, decisions or practices by these particular Defendants that resulted in the purported violations of Mota's rights.[2]

Although the First Circuit has not explicitly addressed the issue, another court in this circuit has concluded that under RLUIPA, as under Section 1983, a damages suit against a government officer in his individual capacity must plead a "causal nexus" between the officer's decision and the purported violation. See Palermo v. White, No. 11-cv-540-SM, 2012 WL 4513905, at *4 (D.N.H. Sept. 4, 2012). For the same reasons that Mota's claim for damages under Section 1983 fails, so too does his claim for damages under RLUIPA. Thus, the Defendants' motion for summary judgment with respect to the damages claims for the Defendants in their individual capacity is thus ALLOWED.[3]

## V.    Conclusion

For the aforementioned reasons, the Defendants' motion for summary judgment, D. 29, is ALLOWED and Mota's cross motion for partial summary judgment, D. 33, is DENIED.

---

[2] The Court also notes that the Defendants plead the defense of qualified immunity with respect to the claims under Section 1983. D. 30 at 14-16. "Qualified immunity provides a safe harbor for public officials acting under the color of state law who would otherwise be liable under 42 U.S.C. § 1983 for infringing the constitutional rights of private parties." Guillemard-Ginorio v. Contreras-Gómez, 490 F.3d 31, 37-38 (1st Cir. 2007) (citation omitted). To overcome the defense of qualified immunity, a plaintiff must show that the "plaintiff's allegations, if true, establish a constitutional violation;" that the "right was clearly established at the time of the alleged violation;" and finally, that "a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." Id. at 38 (citation omitted). Mota has pointed to no precedent that would "clearly establish" that the prior standard operating procedure violated his constitutional rights. Thus, even if the Section 1983 damages action were available to Mota, it would fail because Mota has not met his burden to overcome the qualified immunity defense.

[3] The Defendants also moved to dismiss the claims against Turco because they contend that he was not properly served. D. 30 at 2-3. Because the claims against Turco are resolved on other grounds, this Court declines to reach this alternative ground to dismiss as to Turco. The Court also does not reach the other substantive grounds for dismissal raised by the Defendants given its resolution of the motions as discussed above.

**So Ordered.**

                                                /s/ Denise J. Casper
                                                United States District Judge